IN THE CIRCUIT COURT OF THE
SEVENTH JUDICIAL CIRCUIT, IN
AND FOR ST. JOHNS COUNTY,
FLORIDA

ROBIN NOLAN,

    Plaintiff,

v.

ST. JOHNS COUNTY SCHOOL DISTRICT,

    Defendant.

_____/

CASE NO.: 23-CA-
FLA BAR NO.: 0739685

CA23-1483

# COMPLAINT

Plaintiff, ROBIN NOLAN, hereby sues Defendant, ST. JOHNS COUNTY SCHOOL DISTRICT, and alleges:

## NATURE OF THE ACTION

1. This is an action brought under the Florida Civil Rights Act, codified at Chapter 760, Florida Statutes and 42 U.S.C. §2000e et seq.

2. This action involves claims which are, individually, in excess of Fifty Thousand Dollars ($50,000.00), exclusive of costs and interest.

## THE PARTIES

3. At all times pertinent hereto, Plaintiff, ROBIN NOLAN, has been a resident of the State of Florida and was employed by Defendant. Plaintiff is a member of a protected class due to her race and gender and she was retaliated against after reporting Defendant's unlawful employment practices.

4. At all times pertinent hereto, Defendant, ST. JOHNS COUNTY SCHOOL DISTRICT, has been organized and existing under the laws of the State of Florida. At all times

pertinent to this action, Defendant has been an "employer" as that term is used under the applicable laws identified above. Defendant was Plaintiff's employer as it relates to these claims.

## CONDITIONS PRECEDENT

5. Plaintiff has satisfied all conditions precedent to bringing this action, if any.

## STATEMENT OF THE ULTIMATE FACTS

6. Plaintiff, a white female, began her employment with Defendant on or about August 1998 and was a Math Teacher at St. Augustine High School at the time of her constructive termination in December 2022.

7. Despite her stellar work performance during her employment with Defendant, Plaintiff was subjected to disparate treatment, different terms and conditions of employment, and held to a different standard because of her race and gender and because she reported Defendant's unlawful employment activities and was subject to retaliation thereafter.

8. The disparate treatment and retaliation came at the hands of specifically but not limited to Principal DeArmas Graham, an African American male.

9. This lawsuit follows six years of Plaintiff filing complaints against Graham and reporting his continued discriminatory and disparate treatment.

### 2015-2016

10. Beginning on or around 2015, Graham started his employment with Defendant and immediately began asking Plaintiff personal questions such as, "When are you getting married?" Plaintiff was asked this question on numerous occasions as Graham commonly used this question to deflect her work-related questions, such as questions about student school supplies, or proper procedures. Plaintiff also had to deal with the embarrassment of Graham questioning her home situation with her partner in the presence of her co-workers.

11. During the 2016/2017 school year, Graham's frequent remarks included, but were not limited to: "What you're doing is *immoral*", "I will have your teaching certificate revoked", "Teachers are held to a higher standard"," It is not morally correct for people to live together without being married", "What is the race of your former husband?", "What is the race of your grandchildren?", "Are you marrying Anthony (Plaintiff's partner) because he is Black?", "Have you ever dated an African American man before?", "Do you still talk to your old boyfriends?", and "I would never allow my wife to talk to her previous boyfriends.".

12. Graham never asked Plaintiff's partner, employee Anthony Major, nor did he ask the male spouse of any of the other women he incessantly harassed, questions about their relationship status.

13. In June, 2016, Plaintiff reported Graham's discriminatory conduct verbally and in writing in an equity complaint filed with Defendant's equity office. Plaintiff reports included, without limitation, Graham's his discriminatory remarks and questions. Even though Graham admitted to making some of the remarks, the Defendant took no corrective action and did nothing to stop the unlawful discrimination and harassment.

14. Thereafter, Plaintiff was subject to retaliation. The retaliation includes, without limitation: decreased evaluation scores, unwarranted changes in work schedule and classes, Graham threatening to have Plaintiff's teaching certificate revoked, and false statements made about Plaintiff and her character on official documents and to Plaintiff's co-workers.

15. Further, Graham unjustly denied Plaintiff the ability to teach during summer school, something Plaintiff had done for 18 years.

16. Plaintiff was also reprimanded for her lack of progress in classes, whereas teachers including male staff, received the same or lower progress scores as Plaintiff but were not reprimanded.

17. On or about September 2, 2016, Plaintiff filed a complaint with the EEOC reporting discrimination against her. At some point thereafter, Defendant instructed Graham to have no contact with Plaintiff.

18. However, in continued retaliation against Plaintiff, Graham pulled students and employees out of their classrooms and workspaces in an attempt to coerce them into making false statements against Plaintiff.

19. Further, on Friday, October 28, 2016, Graham approached Plaintiff, from behind, and whispered into her ear "I am going to go into your room between 5th and 7th period to observe your class." Plaintiff advised Graham that per the directive of Defendant, he was not allowed to be around her, however, Graham stated that the school was "his," and that he could do "whatever" he wants. The following Monday, as promised, Graham sat in on Plaintiff's first period class.

20. Due to Defendant's failure to address the inappropriate conduct by Graham, Plaintiff and other females continued to suffer and his harassment continued. Other female employees were subjected to the same behavior and discriminatory treatment based on their gender, race, sexual orientation, and/ or marital status.

**2017**

21. Another example of Graham's retaliation occurred on or about January 13, 2017, when Graham refused to accommodate Plaintiff's physical restrictions and ordered her to stand at her door during class change. At that time, Plaintiff had recent knee surgery and was granted the privilege of sitting down during class change, however, due to the actions and intimidation by

Graham, she was forced to unnecessarily stand. Plaintiff was the only employee that Graham required stand during class change and reported to Defendant's administration for sitting.

22. During the month of February, 2017, Plaintiff was advised that she could not discuss her yearly observation, which she had received less favorable results for, with Katie Maltby, a supervisor, unless Graham was present. Katie Maltby conducted Plaintiff's observation instead of Graham due to the ongoing investigation into his conduct toward Plaintiff. Notably, Plaintiff was informed that Graham specifically advised Maltby to contact him if Plaintiff attempted to contest her results or had any questions pertaining to her observations.

23. Later that year, on or about September 27, 2017, Graham emailed Plaintiff stating that he would again be her evaluator. Plaintiff immediately informed Michelle Dillon who then inquired about appointing someone else. This cycle continued every year after.

## 2018-2019

24. As the retaliation and intimidation continued throughout the 2018-2019 school year, Plaintiff faced unjust criticism from Graham regarding her performance and he required unreasonable deadlines for her to respond to allegations.

25. Specifically, but without limitation, Graham held a meeting accusing Plaintiff of not performing her job. The attendees included Graham, Associate Superintendent for Student Support Services Kyle Dresback, Jill Lee, Assistant Principal Travis Brown, union representative Tammy Whittaker, Michelle Dillon, and Plaintiff. Graham did not facilitate this meeting and left Travis Brown to decipher his notes to determine the purpose of the meeting. Ultimately, Plaintiff was questioned about the number of failing students. Plaintiff explained that many students were failing due to excessive absences and incomplete makeup work, both factors which were outside

of her control. Consequently, Dresback concluded the meeting and advised Plaintiff and Michelle Dillon to follow-up.

26. Notably, Plaintiff's colleagues who encountered similar challenges regarding student success were not threatened with reprimands or confronted in meetings in the same manner which Plaintiff did.

27. Continuing through the school year in 2018 Graham harassed Plaintiff including, without limitation, emailing Plaintiff about minor issues and arranging impromptu meetings without adequately notifying Plaintiff's union representative about his intentions.

28. In October 2018, Graham reprimanded Plaintiff for not standing at the class door during class change. Immediately following this reprimand, Plaintiff submitted her doctor's note regarding her physical limitations, but Graham still required her to stand at the door.

29. Graham's incessant harassment continued through spring 2019, as Defendant did nothing to stop the discrimination and retaliation.

30. In the fall of 2019, Michelle Dillon, Plaintiff's Union Representative, had an increased presence at Defendant's St. Augustine High school campus, as other female staff members came forward to complain about Graham's conduct, specifically but not limited to his constant yelling, finger-pointing, and demeaning commentary, all things which Plaintiff reported to Defendant previously. Notably, some female members of staff refused to take further action in fear of retaliation from Graham.

**2020-2022**

31. Beginning in March 2002, Plaintiff worked from home and conducted class via Zoom, which decreased her interactions with Graham significantly.

32. In or around April 2020, Plaintiff filed another Equity complaint against Graham and Maintenance Director.

33. After the school reconvened in person, Plaintiff made deliberate efforts to avoid encountering; however, Graham took deliberate steps to attend meetings he knew or should have known Plaintiff would be present which he was not required to attend.

34. Graham also repeatedly ignored the directive to have no interaction with Plaintiff. He would intrude upon Plaintiff's conversations to address the other party involved without acknowledging Plaintiff being present which continued into 2022.

35. In the beginning of 2022, Graham unjustly issued a "Letter of Improvement" to Plaintiff without properly notifying her union representative of possible disciplinary action. Notably, the issue which gave rise to this letter related to a parent teacher conference that, unbeknownst to Plaintiff, Graham moved to his conference room. Plaintiff learned of the new location and fact that Graham was going to attend the conference just moments before the meeting. Plaintiff feared being alone with Graham and further retaliation, and thus Plaintiff did not attend the meeting without union representation.

36. By December 2022, Plaintiff could no longer take the abuse by Graham, and she was forced to resign as no employee would have remained working for the Defendant under these circumstances. She could no longer take the continued acts of retaliation and fear of remaining employed within a hostile work environment which Defendant refused to correct.

37. Plaintiff has retained the undersigned to represent her interests in this cause and is obligated to pay a fee for these services. Defendant should be made to pay said fee under the laws referenced above.

## COUNT I
## RACE DISCRIMINATION

7

38. Paragraphs 1 through 37 are realleged and incorporated herein by reference.

39. This is an action against Defendant for discrimination based upon race. This is a disparate treatment and harassment claim.

40. Plaintiff has been the victim of discrimination on the basis of Plaintiff's race in that she was treated differently than similarly situated employees of Defendant who are non-white and has been subject to hostility and poor treatment on the basis, at least in part, of Plaintiff's race.

41. Defendant is liable for the differential treatment and hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

42. Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

43. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a race-based nature and in violation of the laws set forth herein.

44. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein lead, at least in part, to Plaintiff's constructive termination.

45. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon race.

46. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, bodily injury, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief.

## COUNT II
## GENDER DISCRIMINATION- HOSTILE WORK ENVIRONMENT

47. Paragraphs 1 through 37 are re-alleged and incorporated herein by reference.

48. This is an action against Defendant for discrimination based upon gender. This is a hostile work environment claim.

49. Plaintiff has been the victim of an offensive and hostile work environment in that Plaintiff was subjected to frequent comments that were gender-based and/or sexual. These comments were offensive and interfered with her ability to do her job.

50. Defendant is liable for the hostility towards Plaintiff because it controlled the actions and inactions of the persons making decisions affecting Plaintiff or it knew or should have known of these actions and inactions and failed to take prompt and adequate remedial action or took no action at all to prevent the abuses to Plaintiff.

51. Furthermore, Defendant knowingly condoned and ratified the differential treatment of Plaintiff as more fully set forth above because it allowed the differential treatment and participated in same.

52. Defendant's known allowance and ratification of these actions and inactions created, perpetuated and facilitated an abusive and offensive work environment within the meaning of the statutes referenced above.

9

53. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a gender-based nature and in violation of the laws set forth herein.

54. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein led, at least in part, to Plaintiff's constructive termination.

55. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon gender.

56. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief.

## COUNT III
## GENDER DISCRIMINATION- DISPARATE TREATMENT

57. Paragraphs 1 through 37 are re-alleged and incorporated herein by reference.

58. This is an action against Defendant for discrimination based upon gender. This is a disparate treatment claim.

59. Plaintiff has been of disparate treatment in that she was treated differently than similarly situated males regarding the terms and conditions of her employment with Defendant.

60. Defendant was made aware of the actions of its agents but did nothing in response.

61. In essence, the actions of agents of Defendant, which were each condoned and ratified by Defendant, were of a gender-based nature and in violation of the laws set forth herein.

62. The discrimination complained of herein affected a term, condition, or privilege of Plaintiff's continued employment with Defendant. The events set forth herein led, at least in part, to Plaintiff's constructive termination.

63. Defendant's conduct and omissions constitutes intentional discrimination and unlawful employment practices based upon gender.

64. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered emotional distress, mental pain and suffering, past and future pecuniary losses, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses, along with lost back and front pay, interest on pay, bonuses, and other benefits. These damages have occurred in the past, are permanent and continuing. Plaintiff is entitled to injunctive/equitable relief.

## COUNT IV
## RETALIATION

65. Paragraphs 1 through 37 are realleged and incorporated herein by reference.

66. Defendant is an employer as that term is used under the applicable statutes referenced above.

67. The foregoing allegations establish a cause of action for unlawful retaliation after Plaintiff reported or opposed unlawful employment practices adversely affecting her.

68. The foregoing unlawful actions by Defendant were purposeful.

69. Plaintiff voiced opposition to unlawful employment practices during her employment with Defendant and was the victim of retaliation thereafter, as related in part above.

70. Plaintiff is a member of a protected class because she reported unlawful employment practices and was the victim of retaliation thereafter. There is thus a causal

connection between the reporting of the unlawful employment practices and the adverse employment action taken thereafter.

71.     As a direct and proximate result of the foregoing unlawful acts and omissions, Plaintiff has suffered mental anguish, emotional distress, expense, loss of benefits, embarrassment, humiliation, damage to reputation, illness, lost wages, loss of capacity for the enjoyment of life, and other tangible and intangible damages. These damages are continuing and are permanent. Plaintiff is entitled to injunctive relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment against Defendant for the following:

(a)     that process issue and this Court take jurisdiction over this case;

(b)     that this Court grant equitable relief against Defendant under the applicable counts set forth above, mandating Defendant's obedience to the laws enumerated herein and providing other equitable relief to Plaintiff;

(c)     enter judgment against Defendant and for Plaintiff awarding all legally-available general and compensatory damages and economic loss to Plaintiff from Defendant for Defendant's violations of law enumerated herein;

(d)     enter judgment against Defendant and for Plaintiff permanently enjoining Defendant from future violations of law enumerated herein;

(e)     enter judgment against Defendant and for Plaintiff awarding Plaintiff attorney's fees and costs;

(f)     award Plaintiff interest where appropriate; and

(g)     grant such other further relief as being just and proper under the circumstances, including but not limited to reinstatement.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury on all issues herein that are so triable.

DATED this 9th day of June 2023.

                                      Respectfully submitted,

                                      /s/ Marie A. Mattox
                                      Marie A. Mattox [FBN 0739685]
                                      MARIE A. MATTOX, P. A.
                                      203 North Gadsden Street
                                      Tallahassee, FL 32301
                                      Telephone: (850) 383-4800
                                      Facsimile: (850) 383-4801
                                      Marie@mattoxlaw.com
                                      Secondary emails:
                                      marlene@mattoxlaw.com
                                      michelle@mattoxlaw.com

                                      ATTORNEYS FOR PLAINTIFF